**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATOSHA S.,[1] | ) Case No. CV 19-5134-JPR |
| | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM DECISION AND ORDER** |
| v. | ) **AFFIRMING COMMISSIONER** |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

**I.  PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her applications for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  The parties consented to the jurisdiction of the undersigned under 28 U.S.C. § 636(c).  The matter is before the Court on the parties' Joint Stipulation, filed July 30, 2020, which the Court has taken under submission without oral argument.

---

[1] Plaintiff's name is partially redacted in line with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

For the reasons discussed below, the Commissioner's decision is affirmed.

**II. BACKGROUND**

Plaintiff was born in 1975. (Administrative Record ("AR") 54, 66, 157, 161.) She completed 12th grade (AR 188) and worked as a court clerk, in-home caregiver, and bookkeeper (AR 177, 189).

On November 5 and 19, 2013, Plaintiff applied for DIB and SSI, respectively, alleging that she had been unable to work since March 6, 2013, because of lower-back pain, arthritis, depression, anxiety, and a spinal tear. (AR 54-55, 66-67, 157-66, 187.) After her applications were denied (AR 78-79, 82-85, 87-90), she requested a hearing before an Administrative Law Judge (AR 92-94). A hearing was held on March 12, 2015, at which Plaintiff testified, as did a vocational expert and two medical experts. (See AR 29-53.) In a written decision issued April 23, 2015, the ALJ found Plaintiff not disabled. (AR 15-25.) She sought Appeals Council review (AR 9-10), which was denied on November 15, 2016 (AR 1-6).

Plaintiff appealed (AR 1578-80), and on May 22, 2018, this Court reversed and remanded for further administrative proceedings (AR 1603-16). On January 22, 2019, an ALJ conducted another hearing, at which Plaintiff, who was again represented by counsel, and a VE and an ME again testified. (See AR 1530-53.) In a written decision dated April 4, 2019, the ALJ again found Plaintiff not disabled. (AR 1373.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is "more than a mere scintilla, but less than a preponderance." Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to

last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. The Five-Step Evaluation Process

An ALJ follows a five-step sequential evaluation process to assess whether someone is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d).

If the claimant's impairment or combination of impairments does not meet or equal one in the Listing, the fourth step

requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform her past work; if so, she is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy, the fifth and final step of the sequential analysis. §§ 404.1520(a)(4)(v), 404.1560(b), 416.920(a)(4)(v), 416.960(b).

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 6, 2013, the alleged onset date. (AR 1356.) At step two, he determined that she had severe impairments of "degenerative disc disease of the lumbar spine," "asthma," "shoulder impingement," and "morbid obesity." (Id.)

At step three, he found that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 1359.) At step four, he determined that she had the RFC to perform less

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545(a)(1), 416.945(a)(1); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

5

than the full range of sedentary work: she could "lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently"; "stand/walk a total of 2 hours in an 8-hour workday"; "sit 8 hours in an 8-hour workday, with normal breaks"; "occasionally climb ramps and stairs, but . . . never climb ladders, ropes or scaffolds"; "engage in occasional overhead reaching"; and "occasionally stoop, kneel, crouch and crawl." (AR 1360.) She could not work around "unprotected heights," "dangerous machinery," or "dusts, fumes or gases," and she "would miss two consecutive days of work" "every 4 months," "up to 8 days a year." (Id.)

The ALJ found that Plaintiff was unable to perform any past relevant work (AR 1365), but she could work as an inspector, assembler, or polisher, positions that "exist[ed] in significant numbers in the national economy" (AR 1366). Accordingly, he found her not disabled. (AR 1366-67.)

**V. DISCUSSION**[3]

Plaintiff alleges that the ALJ improperly rejected a portion of the opinion of internist Harvey Alpern, a consulting medical expert. (See J. Stip. at 6-13.) For the reasons discussed

---

[3] In Lucia v. SEC, 138 S. Ct. 2044, 2055 (2018), the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during her administrative proceedings. (See AR 8-11, 29-53, 1530-53, 1625-49, 1651-54, 1656-57); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended); see also Kabani & Co. v. SEC, 733 F. App'x 918, 919 (9th Cir. 2018) (rejecting Lucia challenge because plaintiff did not raise it during administrative proceedings), cert. denied, 139 S. Ct. 2013 (2019).

below, remand is not warranted.

## The ALJ Properly Evaluated Dr. Alpern's Opinion

### A. Applicable law

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's. Id.; see §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).[4] But even "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam) (as amended). Moreover, because a testifying medical expert is subject to cross-examination, his opinion may be given greater weight even if he did not examine the claimant. Andrews v. Shalala, 53 F.3d 1035, 1042 (9th Cir. 1995).

### B. Relevant background

Dr. Alpern reviewed Plaintiff's medical record and testified at the March 12, 2015 hearing that she had a history of "distant" asthma, obesity, and degenerative disc disease. (AR 44.) He

---

[4] For claims filed on or after March 27, 2017, the rules in §§ 404.1520c and 416.920c (not §§ 404.1527 and 416.927) apply. See §§ 404.1520c, 416.920c (evaluating opinion evidence for claims filed on or after Mar. 27, 2017). Plaintiff's claims were filed before March 27, 2017, however, and the Court therefore analyzes them under former §§ 404.1527 and 416.927.

noted that although her degenerative disc disease did not "show classic impingement," "atrophy," or "associated findings of ambulation problems," "she would have restrictions." (Id.) He limited her to what was essentially a sedentary RFC. (AR 45.) She also would be absent from work "[e]very three months when she has her [epidural] procedure." (Id.) When the ALJ asked how much time Plaintiff would need off for the procedure, he answered "[a] week," "maybe less." (Id.) The ALJ further inquired whether there was a "reasonable likelihood that [Plaintiff's doctors] would continue [her] epidurals every three months on a sustained basis." (AR 51.) He testified that if the epidurals "demonstrate[d] true effectiveness[,] they may" continue administering them, but "[o]therwise they would recommend surgery." (Id.)

At the January 22, 2019 hearing, Dr. Alpern clarified how much time Plaintiff would need off for the epidural injections, testifying that she was getting them "about every three months"[5] and that they "involve[d] being off work for probably two to three days." (AR 1536.) He explained that his time estimate had changed since the first hearing because once the epidurals became routine, the preoperative portion of the procedure was not always necessary. (AR 1540-41, 1550-51.)

The ALJ gave "great weight" to Dr. Alpern's testimony and

---

[5] Plaintiff points to no treating doctor who opined that she needed injections every three months. And her own testimony on this point was far from clear. She testified at the 2019 hearing that the time between them was "four months" (AR 1536-37), but she also agreed that she "g[o]t them quarterly" (id.), which would be every three months. At the 2015 hearing she testified that she received them "every three to four months." (AR 33.)

opinion because they were "consistent with the overall medical evidence" and he was "a board certified internist" who "was at the first hearing" and had "had the opportunity to review all the medical records in [their] entirety, consider the longitudinal treatment records from the alleged onset date to the [date of the hearing], as well as question [Plaintiff] at the [January 2019] hearing." (AR 1363.)

The ALJ gave only partial weight to Dr. Alpern's testimony that Plaintiff would miss two or three days of work every three months, however, because he found that "[i]t d[id] not appear that [Plaintiff] receive[d] injections that frequently," noting that she had had only five injections from April 2016 through September 2018. (Id.; see AR 1851, 1891-92, 2025-26, 2197-98, 2388-91.) Moreover, the ALJ noted, although Plaintiff testified that she stayed in bed after an injection anywhere from two to seven days, Dr. Alpern opined that six or seven days was uncharacteristically long. (AR 1363; see AR 1542.) Indeed, "records show[ed] that [Plaintiff] was walking soon after her injections without difficulty." (AR 1363; see AR 1891-92, 2198, 2392.) The ALJ rejected Plaintiff's symptom testimony as inconsistent with the objective medical evidence, her conservative treatment, her daily activities, and her collecting unemployment benefits in 2017 (AR 1360-62, 1364-65), a finding she has not challenged on appeal. Based on the evidence, the ALJ found that "every 4 months, [Plaintiff] would miss two consecutive days of work in that month, up to 8 days a year." (AR 1363.)

At the hearing, the ALJ presented hypotheticals to the VE

limiting Plaintiff to "miss[ing] one day per month," "two days per month," "two days" "every four months," and "three days" "every four months." (AR 1545-46.) The VE testified that the inspector, assembler, and polisher positions would still be available in significant numbers in the national economy for someone missing one day of work a month, two days every four months, or "eight days a year." (Id.) But no jobs would be available for someone who missed either two days a month or three days every four months. (AR 1546-47.)

### C. Analysis

Plaintiff argues that in finding that she would receive injections only every four months, the ALJ improperly "focused on th[e] 29-month period [between April 2016 and September 2018] without looking at the entire medical record." (J. Stip. at 8.) But as previously noted, apparently no treating doctor ever opined that she needed injections every three months. Regardless, the ALJ would not have found that she received injections more often than every four months even if he had considered all the epidural injections referenced in the record. The record indicates that Plaintiff had a total of 15 epidural injections — an average of one every four and four-fifths months — between March 13, 2013, and the ALJ's April 4, 2019 decision. (AR 403-05 (Mar. 13, 2013), 419 (Apr. 4, 2013), 440 (June 11, 2013), 530 (Aug. 31, 2013), 661 (Jan. 16, 2014), 950, 964-65 (May 6, 2014), 750 (Sept. 3, 2014), 1208-09 (Feb. 7, 2015), 1427-28 (May 30, 2015), 1514 (Oct. 17, 2015 (Sept. 10, 2015 progress note indicating that injection was scheduled)), 1891-92 (Apr. 7, 2016), 1851 (Feb. 2, 2017), 2025-26 (Nov. 14, 2017), 2197-98 (May

10

3, 2018), 2388-91 (Sept. 1, 2018); see also AR 1536-37 (Plaintiff testifying on January 22, 2019, that she had not had injection since September or October 2018 and not mentioning any upcoming scheduled injections).)

Plaintiff correctly notes that she received more than three injections in 2013, and if the ALJ had focused solely on the period between March 13, 2013, and January 16, 2014, the average time between Plaintiff's injections was less than four months. (AR 403-05, 419, 454, 530, 661.) But focusing only on that time period would have been improper. As Plaintiff concedes, the ALJ was required to review the record as a whole and "is not free to ignore relevant, competent evidence." Kelly v. Berryhill, 732 F. App'x 558, 562 (9th Cir. 2018) (citing Gallant v. Heckler, 753 F.2d 1450, 1455-56 (9th Cir. 1984)). Viewing the record as a whole, the ALJ's finding that Plaintiff had injections no more than once every four months was supported by substantial evidence — indeed, for most of the relevant period it was generous.

Plaintiff provides a litany of reasons why she did not have the injections every three months, as she claimed she needed. (See J. Stip. at 8-10 (attributing delays at various times to rash and excision of neck mass, among other things).) But the ALJ was entitled to extrapolate from a years-long course of conduct covering nearly the entire relevant period that Plaintiff's schedule was unlikely to change. Cf. Molina v. Astrue, 674 F.3d 1104, 1113-14 (9th Cir. 2012) (ALJ properly relied on past frequency of treatment in assessing symptoms' effect on ability to work), superseded by regulation on other grounds as recognized in Schuyler v. Saul, 813 F. App'x 341, 342

(9th Cir. 2020); Luevano v. Berryhill, No. ED CV 16-0380-DFM, 2017 WL 2413686, at *6 (C.D. Cal. June 2, 2017) (ALJ entitled to rely on history of infrequent treatment in assessing frequency and severity of symptoms).

Plaintiff's RFC would allow her to be absent from work up to eight days a year for the epidural injections (AR 1360), which translates into three days for two of the three sets of injections a year and two for the other. This is fully consistent with Dr. Alpern's statement that she would need "two to three days" for each injection. (AR 1536.) Moreover, Plaintiff testified that she "tr[ied] to get [the injections] during the week," while her son was at school. (AR 1550.) At least on occasion, Plaintiff would presumably be able to schedule her injections for a Friday, thereby requiring her to miss only one day of work and making the ALJ's eight-day yearly allowance even more reasonable. Remand is not warranted on this issue.

## VI. CONCLUSION

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[6] IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice.

DATED: September 11, 2020

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[6] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."